## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ARIANA BORREGGINE,** | : | No. 1:13-cv-01423 |
|     Plaintiff | : | |
| | : | (Judge Kane) |
| v. | : | |
| | : | |
| **MESSIAH COLLEGE, et al.,** | : | |
|     Defendants | : | |

### MEMORANDUM

Before the Court is Defendants' motion for summary judgment.  (Doc. No. 38.)  For the reasons that follow, the Court will grant the motion.

**I.  BACKGROUND**

Plaintiff Ariana Borreggine enrolled at Defendant Messiah College in August 2011, where she played on the women's lacrosse team.[1]  (Doc. No. 39 ¶ 1. )  Plaintiff suffers from dyslexia, which was diagnosed during her freshman year of high school.  (Id. ¶ 2.)  Prior to enrolling at Messiah College, Plaintiff played sports for approximately eight to ten coaches and had no difficulty communicating with any of them.  (Id. ¶ 4.)  Prior to her time at Messiah, she also never requested any accommodations from these coaches relating to her dyslexia.  (Id. ¶ 5.)  She never suffered any serious injuries prior to her time at Messiah.  (Id. ¶ 6.)

Around the time of her enrollment, Plaintiff's parents discussed her dyslexia diagnosis with Defendant Heather Greer, head coach of the Messiah women's lacrosse team.  (Doc. No. 39

---

[1] The following relevant facts of record, taken mostly from Defendants' statement of material facts (Doc. No. 39), are undisputed, unless otherwise noted.  Defendants' statement of material facts contain specific citations to the record at each numbered paragraph.  The Court also incorporates facts set forth in Plaintiff's response to Defendants' statement of facts (Doc. No. 62), where appropriate.

¶ 7.) Coach Greer connected Plaintiff with the College's Office of Disability Services to discuss any accommodations needed to address Plaintiff's dyslexia. (Id. ¶ 8.) Upon her enrollment, Plaintiff engaged in on-going communication with Disability Services regarding dyslexia accommodations. (Id. ¶ 10.) At no point, however, did Plaintiff request that Disability Services reach out to Coach Greer concerning accommodations related to dyslexia. (Id. ¶ 11.) Plaintiff testified that she had a "good relationship" with Coach Greer and her teammates during her Freshman year at Messiah, and had no communication problems with Coach Greer at that time. (Id. ¶ 13-14.)

Near the end of her freshman year, Plaintiff suffered a right foot injury during a lacrosse game. (Doc. No. 39 ¶ 15.) She was diagnosed with sesamoiditis of her right foot. Plaintiff was ordered to wear a walking boot as much as possible and to not run while recovering.[2] (Id. ¶ 19.) Nevertheless, that summer, she participated in a Color Run event, which Plaintiff asserts that her physician approved. (Id. ¶ 21; Doc. No. 62 ¶ 21.) Coach Greer found out about Plaintiff's participation in the Color Run through one of Plaintiff's teammates. (Doc. Nos. 39 ¶ 21; 62 ¶ 21.)

At the start of her Sophomore year in Fall 2012, Plaintiff was cleared by her personal physician to participate in all athletic activities. (Doc. No. 30 ¶ 24.) During the first several weeks of the semester, Plaintiff again had no communication issues with Coach Greer. (Id. ¶ 25.) In mid-October 2012, Plaintiff suffered another injury – tendonitis in her Achilles tendon. (Id. ¶ 26.) Her physician ordered her to wear the walking boot "24/7," except when lifting

---

[2] Plaintiff "denies" this asserted fact (Doc. No. 62 ¶ 20), but it comes directly from Plaintiff's deposition, and Plaintiff does not cite any contradictory authority in the record.

weights or showering.³ (Id. ¶ 28.) Plaintiff admits that she sometimes did not wear the boot while sleeping. (Id. ¶ 29; Doc. No. 62 ¶¶ 28-29.) Around this time, her teammates observed Plaintiff not wearing the boot while walking around campus, recollections that Plaintiff appears to dispute. (Doc. Nos. 39 ¶¶ 32-33; 62 ¶ 32.)

Coach Greer routinely held bi-monthly meetings with the lacrosse players. (Doc. No. 39 ¶ 36.) Following one of these meetings in early November 2012, during which Plaintiff's rehabilitation was discussed, Plaintiff sent an e-mail to Coach Greer requesting that any future meetings be held "individually" rather than in front of a large group of people. (Doc. Nos. 39 ¶ 38; 62 ¶¶ 38-39; 42-4 at 2.) Although no "large group meetings" were held after this point (Doc. No. 39 ¶¶ 39-40), future meetings between Plaintiff and Coach Greer often included other individuals, such as assistant coach Anne Brockmeyer and the two women's lacrosse team captains. (Doc. No. 30 ¶¶ 40-41, 62 ¶ 40-41.) At one such meeting, with Ms. Brockmeyer and the two captains present, Plaintiff's injury and attitude – Coach Greer said Plaintiff was not being a "team player" – were discussed. (Doc. No. 39 ¶ 41-42.) At this meeting Plaintiff also gave Coach Greer a paper that had been provided by her mother describing dyslexia. (Id. ¶ 44.) They discussed her disorder, although Plaintiff contends that such discussions were not "meaningful." (See Doc. No. 62 ¶ 46.)

Following winter break, on or about January 11, 2013, there was another meeting; Coach Greer told Plaintiff the meeting would include a lacrosse captain of her choice. (Doc. No. 39 ¶ 48.) Coach Greer told Plaintiff that she "was not being smart with her body" and was not being truthful about her participation in the Color Run. (Id.) Later that day, Coach Greer met with

---

³ Similarly, Plaintiff states that she "denies" this fact (Doc. No. 62 ¶ 9), but once again it comes directly from her own deposition testimony and the Court does not consider it a disputed fact.

Plaintiff again. She drew a diagram with bubbles, arrows and "x's" to describe the two's communication problems (id. ¶ 49); according to Plaintiff's testimony, Coach Greer was "getting really frustrated" when Plaintiff asked her to repeat something. (Doc. Nos 39-2 at 12;. 62 ¶ 49.)

By January 2013, Plaintiff had not yet been released by her physicians to return to full activities following her Achilles tendon injury. (Doc. No. 39 ¶ 50.) Teammates – such as Elizabeth Keeney – were coming to Coach Greer to discuss Plaintiff's rehabilitation. (Id. ¶ 51.) Keeney also confronted Plaintiff about her rehabilitation. (Id. ¶ 52.) During this time, Plaintiff, accompanied by two teammates, stopped by Coach Greer's office and discussed her rehabilitation. (Id. ¶ 53.) Around this same time, Plaintiff's parents requested a meeting with Coach Greer. (Id. ¶ 54.) At the meeting, although Plaintiff's mother discussed dyslexia with Coach Greer, no specific accommodations were requested. (Id. ¶¶ 55-57.) Plaintiff testified that she felt Coach Greer was mocking her during the meeting. (Doc. No. 62 ¶ 58.) Plaintiff and her parents also briefly met with Coach Greer and Defendant Jack Cole, athletic director at Messiah, to discuss the situation. (Doc. No. 39 ¶ 58.)

Another meeting was held on January 23, 2013, between Plaintiff, Coach Greer and Mr. Cole. (Doc. No. 39 ¶ 59.) Plaintiff indicated that she felt bullied, and that she believed Coach Greer was frustrated by her dyslexia. (Id.) They also discussed her foot injury. (Id.) Two days later, on January 25, 2013, Plaintiff met with Coach Greer and Ms. Brockmeyer and was told that due to her bad attitude and failure to abide by the team agreement, Plaintiff was no longer on the lacrosse team. (Id. ¶ 61.) Mr. Cole supported the decision to remove Plaintiff. (Id.)

On January 27, 2013, Plaintiff's parents sent an email to the President of the college, requesting an investigation into Plaintiff's removal from the team. (Doc. No. 39 ¶ 64.) After discussing the situation with Mr. Cole, Defendant Dr. Kris Hansen-Kieffer – assistant professor

4

of exercise science and the Vice Provost and Dean of Students at Messiah (see Doc. No. 30 ¶ 7) – informed Plaintiff's parents that she had conducted an investigation and that the situation had been handled appropriately. (Id.) Plaintiff's parents' letter made no reference to any disability. (Id. ¶ 65.) On January 28, 2013, Plaintiff withdrew as a student from Messiah. (Id. ¶ 66.) Following her withdrawal, Plaintiff suffered from prolonged loss of sleep and convulsive crying. (Id. ¶ 68.) Plaintiff has also met with therapists to discuss her struggles and dyslexia. (Id. ¶ 69.) She enrolled at Eastern University in August 2013, and joined the women's lacrosse team; she has not requested any accommodations for her dyslexia from her current coaches. (Id. ¶ 70-71.)

On May 28, 2013, Plaintiff filed a two-count complaint in this Court against Defendants Messiah College, Board of Trustees of Messiah College, Heather Greer, Jack Cole, and Dr. Kris Hansen-Kieffer, bringing claims for disability discrimination under Section 504 of the Rehabiliation Act, and for intentional infliction of emotional distress under Pennsylvania state law. (Doc. No. 1.) Defendants filed a motion to dismiss. (Doc. No. 13.) The Court granted the motion and, in relevant part, dismissed the Rehabiliation Act claims against the individual Defendants and ordered Plaintiff to re-plead her intentional infliction of emotional distress claim. (Doc. Nos. 25, 26.) Plaintiff then filed an amended complaint on February 5, 2014. (Doc. No. 30.)

On September 22, 2014, Defendants moved for summary judgment. (Doc. No. 38.) After the Court ordered Plaintiff to file a corrected statement of facts that better conformed to Local Rule 56.1, Plaintiff did so on January 23, 2015. (Doc. No. 62.) Defendants responded to

the new statement of facts on February 2, 2015. [4] (Doc. No. 63.) The motion for summary judgment is fully briefed and ripe for disposition.

## II. LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is material if it might affect the outcome of the suit under the applicable law, and it is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). At summary judgment, the inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law. Id. at 251-52. In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

---

[4] Specifically, after acknowledging deficiencies in her original response to Defendants' statement of undisputed facts, Plaintiff filed a motion for leave to file an amended statement of facts. (Doc. No. 51.) On January 15, 2015, the Court granted the motion but also rejected Plaintiff's proposed amended statement of facts, noting that it, among other deficiencies, failed to identify which of Defendants' proposed facts Plaintiff actually disputed. (Doc. No. 57.) The Court ordered Plaintiff to file a statement that better conformed to Local Rule 56.1, which Plaintiff eventually filed on January 23, 2015. (Doc. No. 62.)

Defendants were given an opportunity to respond to the new statement of facts; on February 2, 2015, Defendants filed a brief in which they asked that the Court again reject Plaintiff's statement of facts as non-conforming with the local rules. (Doc. No. 63.) The Court will not do so. Although Plaintiff's amended statement is not a model of clarity – and often raises legal arguments instead of properly refuting Defendants' contentions with citations to the record – Plaintiff's statement corresponds to Defendants', and sets forth which facts Plaintiff disputes and does not dispute, thereby generally allowing for "direct and accurate consideration of the motion." See Gantt v. Absolute Mach. Tools, Inc., No. 06-1354, 2007 WL 2908254, at *3 (M.D. Pa. Oct. 4, 2007).

6

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Grp. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is warranted. Celotex, 477 U.S. at 322. With respect to the sufficiency of the evidence that the non-moving party must provide, a court should grant a motion for summary judgment when the non-movant's evidence is merely colorable, conclusory, or speculative. Anderson, 477 U.S. at 249-50. There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Further, a party may not defeat a motion for summary judgment with evidence that would not be admissible at trial. Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 387 (3d Cir. 1999).

**III.    DISCUSSION**

Defendants move for summary judgment on the two counts alleged in Plaintiff's amended complaint: (1) Plaintiff's claims under the Rehabilitation Act, and (2) Plaintiff's claim alleging intentional infliction of emotional distress under Pennsylvania law. Defendants also ask the Court to dismiss Plaintiff's request for punitive damages.

**A.    Rehabilitation Act (Count I)**

### 1.     Qualified individual by virtue of her foot injury

As an initial matter, the Court must address the <u>basis</u> of Plaintiff's Rehabilitation Act claims. To qualify for protections under the Rehabilitation Act – protections the Court will discuss further below – a plaintiff must be a qualified individual with a disability, and must be discriminated against on the basis of that disability. <u>See, e.g.</u>, <u>Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd of Educ.</u>, 587 F.3d 176, 189 (3d Cir. 2009). Plaintiff appears to allege alternatively that she was discriminated against on (1) the basis of her foot and Achilles tendon injuries and (2) her dyslexia. (<u>See</u> Doc. No. 49 at 11-20.)

However, the Court agrees with Defendants that although Plaintiff is a qualified individual with a disability by virtue of her dyslexia, she is not a qualified individual by virtue of her foot injuries, which do not qualify as a "disability" based on the record before the Court. An individual is disabled where she has a "physical or mental handicap which substantially limits one or more . . . major life activities." <u>See</u> <u>Nathanson v. Med. Coll. of Penn.</u>, 926 F.2d 1368, 1381 (3d Cir. 1991). At summary judgment, then, "the key question is whether [Plaintiff] has proffered sufficient evidence such that a jury could determine that her impairment substantially limited a major life activity." <u>Bush v. Donahoe</u>, 964 F. Supp. 2d 401, 416-17 (W.D. Pa. 2013). Courts will consider, among other factors, the duration of the limitation, and the degree to which a major life activity –- in this case, walking – is impaired; the impairment must be "substantial." <u>Id.</u>

Plaintiff argues in her brief – without citation to the record – that Plaintiff was "unable to walk for prolonged periods of time." (<u>See</u> Doc. No. 49 at 16, 19.) Without more, this is plainly insufficient to establish disability at the summary judgment stage, particularly in light of the undisputed evidence that Plaintiff was engaging in "pick up" lacrosse games and participated in

a Color Run at various times during her rehabilitation.[5] (See Doc. No. 39 ¶¶ 21, 35.) Based on the summary judgment record, the Court finds that Plaintiff has not adduced evidence establishing that she was <u>substantially</u> limited in the major life activity of walking. See <u>Bush</u>, 964 F. Supp. 2d at 421 (finding that the summary judgment record failed to establish that the Plaintiff – who suffered from a foot sprain and was in a walking boot – was substantially limited in her ability to walk, or that she was suffering from "anything more than a temporary impairment"); <u>Ellis v. McHugh</u>, No. 09-1976, 2011 WL 1344550, at *4-5 (M.D. Pa. Mar. 18, 2011) (finding that the summary judgment record failed to establish that the Plaintiff was substantially limited in her ability to walk). Stated differently, Plaintiff has not established that she suffered from more than "comparatively moderate" limitations on her ability to walk. See <u>Kelly v. Drexel Univ.</u>, 94 F.3d 102, 103-06 (3d Cir. 1996). The Court will now proceed to Plaintiff's discrimination claim premised on her dyslexia.

### 2. Discrimination on the basis of her dyslexia

Defendants Messiah College and the Board of Trustees of Messiah College[6] argue that they are entitled to summary judgment on Plaintiff's claim that she was removed from the lacrosse team on the basis of her dyslexia in violation of Section 504 of the Rehabilitation Act. Specifically, they assert that summary judgment is appropriate because the undisputed record

---

[5] That Plaintiff participated in "pick-up" lacrosse games is yet another fact that Plaintiff facially "disputes" in her statement of facts while pointing to <u>no</u> contrary evidence in the record. (Doc. No. 62 ¶ 35.) Accordingly, the Court does not consider it a disputed fact that Plaintiff participated in "pick-up" lacrosse games while recovering from her injury.

[6] This claim was dismissed as to the individual Defendants per the Court's order of November 15, 2013. (Doc. Nos. 25, 26.)

indicates that Plaintiff was removed from the lacrosse team because of concerns over her attitude and commitment to proper rehabilitation, rather than her dyslexia.

In order to establish a discrimination claim under Section 504 of the Rehabilitation Act, a plaintiff must demonstrate that: (1) she has a disability, or was regarded as having a disability; (2) she was "otherwise qualified" to participate in school activities; and (3) she was "denied the benefits of the program or was otherwise subject to discrimination because of [her] disability." D.E. v. Cent. Dauphin Sch. Dist., 765 F.3d 260, 269 (3d Cir. 2014). Under the Rehabilitation Act, the disability must be the "sole cause" of the discrimination. See Lamberson v. Pennsylvania, 561 F. App'x 201, 207 (3d Cir. 2014). It does not appear that the first two elements are in dispute, and the question for the Court therefore is whether there is evidence from which a reasonable jury could conclude that Plaintiff was removed from the lacrosse team on the basis of her disability, i.e., her dyslexia.

The Court finds that no reasonable fact finder could conclude that Plaintiff's dyslexia was the sole reason for her removal from the lacrosse team, and will grant summary judgment on this claim. The issue of Plaintiff's attitude about the recovery from her injuries – the proffered reason for ultimately removing her from the team – is a recurring theme throughout the factual record.[7] (See generally Doc. Nos. 39, 62.) The record indicates that players themselves reported concerns about Plaintiff's rehabilitation to Coach Greer, such as Plaintiff not wearing the walking boot at all times, her participation in "pick up" lacrosse games, and her negative attitude. (See Doc. No. 39 ¶¶ 21, 33-35, 51.) When Defendants ultimately removed Plaintiff

---

[7] As Defendants point out, Plaintiff testified in her deposition that she had no communication issues with Greer prior to her injury and that they had a positive relationship. (Doc. No. 39 ¶¶ 13-14.)

from the team, Plaintiff was informed it was due to her attitude about her recovery. (See id. ¶ 61.)

In contrast, the record is almost entirely devoid of evidence supporting Plaintiff's claim of discrimination based her dyslexia or tending to show that the proffered reasons for removing her from the team were a mere pretext to discrimination.[8] Plaintiff offers a few isolated examples of alleged hostility from Coach Greer related to her dyslexia; Coach Greer once drew a diagram about their communication issues during a meeting between the two (Doc. No. 39-2 at 12, 15), and she once accused Plaintiff of "using her dyslexia as a crutch" (id. at 14, 18). Even accepting that this evidence suggests some hostility toward Plaintiff's dyslexia on the part of Coach Greer, the record indicates that the decision to remove Plaintiff from the team was also supported by Mr. Cole (Doc. No. 39 ¶ 61) and later affirmed by Dr. Hansen-Kieffer (id. ¶¶ 64-65) and there is no evidence anywhere in the record of hostility from either Mr. Cole or Dr. Hansen-Kieffer concerning Plaintiff's dyslexia. As the Court indicated above, under the Rehabilitation Act, a Plaintiff must show that the disability was the "sole" cause of a challenged

---

[8] Some courts apply the McDonnell-Douglas burden shifting framework to discrimination claims under the Rehabilitation Act; under this framework, if a plaintiff makes out a prima facie case, the defendant has the burden of establishing a legitimate non-discriminatory reason that the challenged action was taken. See Walsh v. Univ. of Pittsburgh, No. 13-00189, 2015 WL 128104, at *13 (W.D. Pa. Jan. 8, 2015); Fleming v. New York Univ., 865 F.2d 478, 482 (2d Cir. 1989). The plaintiff, then, may "defeat the summary judgment motion by pointing to some evidence, direct or circumstantial," from which a fact-finder would reasonably disbelieve the proffered legitimate reason. See Shaner v. Synthes, 204 F.3d 494, 501 (3d Cir. 2000). Here, even if the Court found that Plaintiff has set forth a prima facie case of discrimination based on her disability, there is certainly insufficient evidence to counter the legitimate reasons proffered by Defendants and amply supported by the record as to why Plaintiff was removed. See Ezold v. Wolf, Block, Schorr & Solis–Cohen, 983 F.2d 509, 531 (3d Cir.1992) ("[T]he non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence . . . ").

action, not just a motivating factor. See Lamberson v. Pennsylvania, 561 F. App'x at 207. Even viewing the evidence in a light most favorable to Plaintiff, the Court concludes that no reasonable fact finder could make that finding based on this record. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986) ("At summary judgment, the inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law."). Accordingly, the Court will grant summary judgment to Defendants on this claim.[9]

### B.  Intentional Infliction of Emotional Distress (Count II)

Defendants also move for summary judgment on Plaintiff's intentional infliction of emotional distress claim, arguing that based on the record: (1) the Defendants' actions are not

---

[9] Although Plaintiff's brief is somewhat opaque on the issue, Plaintiff appears to assert a second claim under the Rehabilitation Act, related to the denial of reasonable accommodations. See A.M. ex rel. J.M. v. NYC Dep't of Educ., 840 F. Supp. 2d 660, 679 (E.D.N.Y. 2012) ("Discrimination on the basis of a disability includes 'not making reasonable accommodations' for a person 'otherwise qualified' with a disability.") Although Plaintiff briefly references the concept of "reasonable accommodations" (see Doc. No. 49 at 13), she does not proceed to explain what accommodations in the record Plaintiff specifically requested and was denied; that is, Plaintiff does not highlight for the Court precisely what set of facts in the record – or what law – supports this theory of the case. Plaintiff's brief suggests that she may be alleging that she was denied accommodations related to her foot injury. (See Doc. No. 49 at 11) ("[Plaintiff] was not afforded the opportunity to recover from her athletic injury disability.") However, as discussed above, Plaintiff has failed to establish that she is a qualified disabled individual by virtue of her foot injury.
   Regardless, the Court's review of the record fails to indicate any necessary accommodations that were requested and denied, amounting to a denial of "meaningful access," and summary judgment will be granted to the extent she seeks to bring a claim related to the denial of reasonable accommodations. See A.M. ex rel. J.M., 840 F. Supp. 2d at 680 (citing Southeastern Cmty. Coll. v. Davis, 442 U.S. 397, 410 (1979) ("[A]ny requested accommodation must first be deemed necessary to ensure an individual with disabilities has 'meaningful access' to the benefit in question."). Indeed, Plaintiff admitted that neither her nor her parents requested any accommodations when they met with Coach Greer at the meeting prior to her removal from the team (see Doc. No. 39-3 at 1.), and that she was otherwise in contact with the Office of Disability Services regarding academic accommodations (see Doc. No. 39-1 at 12).

sufficiently outrageous, and (2) Plaintiff suffered insufficient physical manifestation of her injury.  (Doc. No. 48 at 22-25.)

As the Court has already noted in prior orders in this case, under Pennsylvania law, a plaintiff must "demonstrate intentional outrageous or extreme conduct by the defendant, which causes severe emotional distress" to state a claim for intentional infliction of emotional distress. Reeves v. Middletown Athletic Ass'n, 866 A.2d 1115, 1122 (Pa. Super. Ct. 2004).  This has been defined as conduct "so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society."  Id. at 1122 n.4 (quoting Hoy v Angelone, 720 A.2d 745, 754 (Pa. 1998)).  In addition to alleging outrageous conduct, Plaintiff must also suffer physical injury.  Rolla v. Westmoreland Health System, 651 A.2d 160, 163 (Pa. Super. Ct. 1994) (citing Hart v. O'Malley, 647 A.2d 542, 554 (Pa. Super. Ct. 1994)).  See also Reeves, 866 A.2d at 1122-1123 ("[A] plaintiff must suffer some type of resulting physical harm due to the defendant's outrageous conduct.").

The Court agrees with the Defendants that a reasonable fact-finder could not conclude based on the record of this case that the conduct of the Defendants was sufficiently outrageous to sustain her IIED claim under Pennsylvania law, and summary judgment is therefore appropriate on this claim.  In their prior motion to dismiss, Defendants previously asked this Court to dismiss Plaintiff's IIED claim on the basis that the allegations in the complaint were not sufficiently outrageous; although the Court declined to make such a finding at the time, it noted that this partly because it was still "the early stage of the litigation."  (See Doc. No. 25.)  Along these lines, Pennsylvania case law instructs that summary judgment is a more appropriate place to make such a determination than on a motion to dismiss.  See Lane v. Cole, 88 F. Supp. 2d 402, 407 (E.D. Pa. 2000).  Indeed, prior to submitting the question to a jury, "[i]t is the court's

13

responsibility to determine if the conduct alleged in a cause of action reaches the requisite level of outrageousness." Andrews v. City of Phila., 895 F.2d 1469, 1487 (3d Cir. 1990).

Now that the parties have completed discovery, the Court concludes that Defendants are entitled to summary judgment on Plaintiff's discrimination claims. Additionally, many of the remaining allegations of the complaint – which the Court noted the first time it addressed the outrageousness of Plaintiff's allegations – simply are not supported by the record.[10] IIED claims are reserved only for truly exceptional cases. See Hoy, 720 A.2d at 754 (observing that recovery for IIED is "reserved by the courts for only the most clearly desperate and ultra extreme conduct"). Because the Court finds that Plaintiff has not adduced evidence supporting her discrimination claim – and no other evidence of sufficiently outrageous conduct – the Defendants are entitled to summary judgment on this count as well.[8]

C.   **Punitive Damages**

Lastly, Defendants ask the Court to strike Plaintiff's request for punitive damages. Punitive damages are not a separate cause of action, and a plaintiff "cannot recover punitive damages independently from an underlying cause of action." DiGregorio v. Keystone Health

---

[10] As one example, the complaint alleged that Coach Greer "falsely labeled [Plaintiff] a liar." (See Doc. No. 1.) However, the undisputed record indicates that players themselves reported to Coach Greer concerns about Plaintiff's rehabilitation, such as Plaintiff not wearing the walking boot at all times. (See Doc. No. 39 ¶¶ 21, 33-35, 51.) There is no evidence that Coach Greer falsely concocted these allegations. Additionally, the record reveals that the individual Defendants other than Coach Greer – Mr. Cole and Dr. Hansen-Kieffer – had extremely limited involvement in the events leading up to Plaintiff's removal from the lacrosse team.

[8] The Court also finds that summary judgment is appropriate on the IIED claim because the Court agrees with Defendants (see Doc. No. 48 at 24) that Plaintiff's "prolonged loss of sleep and convulsive crying" is not a sufficient "physical manifestation" of her distress to sustain her IIED claim. See, e.g., Moolenaar v. Atlas Motor Inns, Inc., 616 F.2d 87, 89 (3d Cir. 1980).

Plan E., 840 A.2d 361, 369 (Pa. Super. Ct. 2003).  Here, the Court is granting summary judgment to Defendants on both counts of Plaintiff's amended complaint.  Accordingly, because there is no remaining underlying claim for which Plaintiff may seek punitive damages, the Court will grant summary judgment on Plaintiff's claim for punitive damages.

## IV.   CONCLUSION

The Court will grant summary judgment to Defendants on both counts of Plaintiff's amended complaint, and will enter judgment in favor of Defendants.  An order consistent with this memorandum follows.